IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MT. AIRY BUSINESS CENTER, INC., )
a North Carolina Corporation, )
)
Plaintiff )
)
v. ) 10CV307
)
)
CITY OF KANNAPOLIS, NORTH )
CAROLINA, a North Carolina municipality, )
)
Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on the motion to abstain by Defendant City of Kannapolis ("City") (Docket Entry 11.) Plaintiff Mt. Airy Business Center, Inc. ("Mt. Airy") has filed a response in opposition to the motion. (Docket Entry 14.) On October 17, 2013, the court heard arguments by the parties and took the matter under advisement. For the reasons that follow, this Court will recommend that the motion to abstain be denied.

## BACKGROUND

On February 22, 2010, the city of Kannapolis adopted a new regulatory scheme aimed at regulating the electronic sweepstakes gaming business within the City. (Compl. ¶¶ 1, 39-58.) The regulations consisted of three amendments to municipal ordinances. First, the City enacted a text amendment to its zoning ordinance (also known as "the Unified Development Ordinance" or "UDO"). (Compl. ¶¶ 39-47.) Prior to the zoning amendment, sweepstakes operations were not permitted anywhere within the City. (UDO Section 4.6, Table 4.6-1.) (*See* Affidavit of Benjamin Warren ¶ 5, Docket Entry 13.) The text

amendment permits sweepstakes operations but only within certain zoning districts in the City, and places limits on the proximity of such businesses to residential areas, churches, child care centers and cemeteries. The zoning amendment also requires designated parking, limits the number of computer terminals within any one business location and prohibits 24-hour operations of such businesses. (Compl. ¶¶ 39-47; Warren Aff. ¶ 5.)

At the same time, the City enacted a business regulation setting hours and other operational standards for sweepstakes businesses. (Compl. ¶¶ 48-52, Warren Aff. ¶ 6.) Finally, the City amended its privilege license rate schedule to include sweepstakes operations as a specific category and to establish the tax rate as $500 per computer terminal per year. (Compl. ¶¶ 53-58; Warren Aff. ¶ 6.)

Mt. Airy operates a business called West C Business Center ("West C") within the city limits of Kannapolis. West C opened in June 2008 and offers various retail services as well as electronic sweepstakes gaming to its customers. As described in affidavits and by counsel in oral arguments, to play sweepstakes a customer opens a free account with a log-in name and password. The customer then logs in on one of the on-site computer terminals and may obtain a number of sweepstakes entries based on the amount of computer time purchased. For each dollar of computer time purchased (5 minutes), a user is given 100 sweepstakes units, or entries. Account holders also receive 100 additional sweepstakes entries per day, for no charge. By spending at least 25 of these entries, a player obtains one sweepstakes result. Thus, for every dollar spent, a user obtains four results or plays. (Compl. ¶¶ 2, 17, 19, 23, and 25; Warren Aff., ¶¶ 9-14.)

A user who selects sweepstakes on the computer menu then can click on "Reveal" to learn whether his entries are winners. Alternatively, a user can run a program that simulates a game of chance before revealing whether the user's entries contain a winner. The simulated games are made to appear like a game of poker or slots, or another game of chance. In reality, though, the game itself has no impact on whether an entry is a winner. Once a user learns he has a winning entry, he can then go to the cashier to collect his winnings, in the form of additional computer time or cash. (Compl. ¶ 19; Warren Aff. ¶¶ 15-16.)

On April 5, 2010, the City notified Mt. Airy that its operations were in violation of the Kannapolis UDO, and gave Mt. Airy a deadline to either come into compliance or to stop operating a sweepstakes business. (Warren Aff. ¶ 17.) Following a meeting on April 14, 2010, Mt. Airy was given an opportunity to present evidence and arguments that its business was not in violation of the UDO. (Warren Aff. ¶ 8.) On May 19, 2010, the City's Planning Director issued a final determination as to Mt. Airy's zoning compliance, concluding that "[s]weepstakes gaming is at least one of the primary uses of the West C premises, and, as such, continues to violate the UDO." (Warren Aff. ¶ 20, and Ex. D thereto.) Mt. Airy was given until June 21, 2010 to appeal the determination to the Kannapolis Zoning Board of Adjustment. (*Id.* ¶ 21.)

Mt. Airy filed this lawsuit on April 21, 2010, challenging all three of the ordinance amendments passed by the City. Mt. Airy first alleges that the City was without the statutory authority, under North Carolina law, to enact any of the ordinances. Mt. Airy also contends that the ordinances violate: (1) Mt. Airy's right to procedural due process under the North

Carolina and United States Constitutions; (2) Mt. Airy's right to equal treatment under the law as provided in the North Carolina and United States Constitutions; (3) the rights of Mt. Airy or its customers to free speech and freedom of assembly, in violation of the North Carolina and United States Constitutions; (4) the dormant Commerce Clause of the United States Constitution; (5) the General Warrants Clause of the North Carolina Constitution and the 4th Amendment to United States Constitution; and (6) Mt. Airy's substantive due process rights under the 5th Amendment to the United States Constitution and the Law of the Land Clause of the North Carolina Constitution. Mt. Airy also alleges that the privilege tax ordinance is prohibited by the Internet Tax Freedom Act.

The City filed its motion on June 2, 2010, asking this court to stay or dismiss Mt. Airy's claims pursuant to the abstention principles set forth in *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941) and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). (Docket Entry 11.)

## ANALYSIS

Federal courts are under a strict duty to exercise the jurisdiction that is conferred on them by Congress. *Quackenbush v. Allstate Insur. Co.*, 517 U.S. 706, 713 (1996). Under limited circumstances a court may abstain from exercising jurisdiction where a state court has an important countervailing interest. *Id.* "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 813 (1976); *see also Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007) (recognizing that abstention is an "extraordinary and narrow exception" to the obligation of federal courts to exercise jurisdiction). Two distinct abstention doctrines are at issue here: *Pullman* abstention and *Burford* abstention.

4

*Pullman* abstention instructs that a federal court must abstain if two elements can be shown: (1) there is an unclear issue of state law presented for decision; and (2) resolution of that unclear issue of state law may moot or present in different posture the federal constitutional issue such that the state law issue is potentially dispositive. *Educ. Servs., Inc. v. Maryland State Bd. for Higher Educ.*, 710 F.2d 170, 174 (4th Cir. 1983). "[A]bstention is not to be ordered unless the statute is of an uncertain nature, and is obviously susceptible of a limiting construction." *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 237 (1984). "[A]bstention under Pullman rests upon three rationales: (1) the avoidance of friction between federal and state courts; (2) the avoidance of erroneous interpretations of state law; and (3) the avoidance of unnecessary constitutional rulings." *Stuart Circle Parish v. Bd. of Zoning Appeals of Richmond*, 946 F. Supp. 1225, 1230 (E.D. Va. 1996) (citing Erwin Chemerinsky, *Federal Jurisdiction*, Second Edition, 688 (1994)).

*Burford* abstention prevents "a federal court from interfering with a complex state regulatory scheme concerning important matters of state policy for which impartial and fair administrative determinations subject to expeditious and adequate judicial review are afforded." *Meredith v. Talbot County, Md.*, 828 F.2d 228, 231 (4th Cir. 1987) (internal quotations and citation omitted). *Burford* abstention is justified in a narrow range of circumstances where the federal court's jurisdiction would "unduly intrude" on "complex state administrative processes" because either (1) the difficult questions of state law transcend the importance of the case in federal court; or (2) a review by the federal courts would disrupt "state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Martin*, 499 F.3d at 364 (quoting *New Orleans Pub. Serv., Inc. v.*

*Council of New Orleans*, 491 U.S. 350, 361-62 (1989) (*NOPSI*)). When a plaintiff's federal claims stem solely from the construction of state or local land use or zoning law, not involving their constitutional validity and barring any exceptions, the federal court should abstain under *Burford*. *Pomponio v. Fauquier County Bd. of Supervisors*, 21 F.3d 1319, 1328 (4th Cir. 1994) (*en banc*) (overruled in part on other grounds by *Quackenbush*, 517 U.S. at 728-31).

In its motion to dismiss, the City advances two arguments for abstention: (1) this case deals with a number of unsettled state law issues with regard to the regulation of sweepstakes (*Pullman*); and (2) the Fourth Circuit has shown a preference for abstaining in cases involving zoning and gaming policies which are matters of state law (*Burford*).

The City asserts that there are a number of unsettled state law issues regarding the regulation of sweepstakes. However, it is unclear exactly what state issues are unsettled such that abstention would be appropriate. The City first argues that one such unsettled issue is the application of existing state criminal statutes to promotional sweepstakes. However, because these criminal statutes are not the subject of this litigation, the narrow confines of *Pullman* do not apply. *See Educ. Svcs.*, 710 F.2d at 174-75 (finding *Pullman* abstention improper where no one is litigating the claimed "unclear" state law issue). Moreover, the adoption by the City of a comprehensive taxing and regulatory scheme assumes that sweepstakes are lawful in the City (and the state). The City also argues that the state law is unsettled because the North Carolina General Assembly "remains keenly interested in any type of electronic gaming" and might take up the issue in the future. (Def.'s Br. Supp. Mot. to Abstain at 7, Docket Entry 12.) While there is a possibility that the General Assembly will address the issue of electronic gaming sweepstakes in the future, it is not up to this court to

wait for that to happen. This case has been pending for over three years, and it is time to move forward. For the most part, the case involves federal constitutional questions, not state law issues. The City has not identified any case law to support its position that the possibility of legislative action is relevant in a *Pullman* abstention analysis.[1] *See Shell Island Inv. v. Town of Wrightsville Beach*, 900 F.2d 255, *3 (4th Cir. 1990) (unpublished) (emphasis in original) (quoting *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 237 (1984) ("In determining whether an issue of state law is sufficiently unsettled to warrant *Pullman* abstention, the relevant inquiry is not whether there is a bare, though unlikely possibility that state courts might render adjudication of the federal question unnecessary.")).

As pointed out by Mt. Airy, the cases cited by the City in support of its argument that alleged uncertainty of state law favors abstention simply are not on point. The most common application of the *Pullman* abstention doctrine is found in cases involving "routine land-use disputes that inevitably and constantly arise among developers, local residents, and municipal officials [which are] simply not the business of the federal courts." *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 828 (4th Cir. 1995) (quoting *Gardner v. City of Baltimore*,

---

[1] The court notes that in 2010 the North Carolina General Assembly passed HB 80, amending the criminal statutes of North Carolina to add a provision making it unlawful to "operate, or place into operation, an electronic machine or device" in order to conduct or promote a "sweepstakes through the use of an entertaining display, including the entry process or the reveal of a prize." N.C. Gen. Stat. § 14-306.4. This legislation was challenged on constitutional grounds in state court and was subsequently upheld by the North Carolina Supreme Court. *See Hest Techs., Inc. v. State ex rel Perdue*, 366 N.C. 289, 748 S.E.2d 429 (2012) (finding statute constitutional). Subsequent to the enactment of HB 80, but prior to the Supreme Court decision in *Hest*, this court directed the parties to submit briefs as to whether the statute mooted the issues in this case. Mt. Airy contended that the bill did not moot this case, while the City conceded that in light of the pending (at that time) challenge to the legislation "it is premature to declare this case moot." (Def.'s Br. on Mootness at 7, Docket Entry 20.) During oral argument the court again questioned counsel for the parties about the effect the statute and *Hest* have on this case. The City conceded that *Hest* did not dispose of this case because Mt. Airy has retooled its operations following *Hest* so as to comply with the statute. The City has not engaged in any enforcement action against Mt. Airy.

7

969 F.2d 63, 67 (4th Cir. 1992)). In most of these cases, no federal laws were involved in the initial permit or approval process; the federal constitutional claims arose solely from the denial of a permit or approval. *See, e.g., MLC Automotive, LLC v. Town of Southern Pines*, 532 F.3d 269 (4th Cir. 2008); *Meredith v. Talbot County*, 828 F.2d 228 (4th Cir. 1987); *Front Royal & Warren Cnty Indus. Park Corp. v. Town of Front Royal*, 945 F.2d 760 (4th Cir. 1991).

This case presents matters of both federal and state concern and clearly does not involve only a local zoning matter. The City has enacted a comprehensive regulatory and taxing scheme allegedly without specific state authority and by which Mt. Airy's business, it contends, is improperly reclassified and taxed. Mt. Airy is not asking this court to interpret the City's regulatory scheme; Mt. Airy contends that the ordinances deprive Mt. Airy of rights protected by the federal constitution. *Pullman* abstention is not appropriate under the facts and circumstances of this case.

Abstention under *Burford* likewise is not applicable here. As discussed above, *Burford* abstention is appropriate in two very narrow contexts:

> (1) [W]hen there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*NOPSI*, 491 U.S. at 361 (internal quotations and citation omitted); *see also Town of Nags Head v. Toloczko*, 728 F.3d 391, 396 (4th Cir. 2013) (quoting same). "There is no formulaic test for *Burford* abstention, and, although the doctrine has many different forks and prongs, [abstention's] central idea has always been one of simple comity." *MLC Automotive*, 532 F.3d at 280 (internal quotations and citations omitted).

Courts have consistently indicated that matters of zoning and local land use are "classic" examples of situations where *Burford* should apply. *Id.* at 282. However, in this case the City's characterization of its ordinances as pertaining to "gaming" and "land use" is not determinative. There is no concrete test to determine in which types of cases a federal court must abstain, nor can a federal court abstain when the grounds do not meet "traditional abstention requirements." *See Martin*, 499 F.3d at 363, 369 (noting that no court has held that "*Burford* abstention is appropriate whenever federal litigation affects an important state interest.").

Plaintiff's claims are fairly simple:

> Plaintiff has been operating since June 2008, and continues to operate today, its Business Center in the City. Then, in February 2010, the City adopted a new, "comprehensive" regulatory scheme composed of a zoning amendment, a business regulation amendment and a tax amendment. The City adopted these ordinance amendments without any respect for federal or state law, and with the purpose of unfairly singling Plaintiff out such that Plaintiff would close its business center.

(Pl.'s Mem. in Opp'n. to Mot. to Abstain at 15, Docket Entry 14.) This case is not one where state review is pending or where Plaintiff is appealing a denial of a permit or seeking a determination as to whether the City's ordinances apply to it. Mt. Airy is challenging the validity of the City's regulatory scheme on constitutional and statutory grounds. As such, unusual circumstances exist which tip the scales against abstention. *See Pomponio*, 21 F.3d at 1327 (noting that in cases with "unusual circumstances" courts have deviated from the broad policy of abstention where there is "reflected the presence of a genuine and independent federal claim includ[ing] . . . a claim of federal statutory preemption as well as First Amendment rights"); *see also Frankel v. Town of Shelter Island*, No. CV 88-593, 1988 WL 46108

at *5 (E.D.N.Y. 1988) (court declined to invoke *Burford* abstention doctrine where a plaintiff, a waterfront property owner engaged in a dispute with town over the mooring of a fishing vessel which he used as his dental office, alleged that various state and local ordinances were applied to him in bad faith in in furtherance of a conspiracy to deprive him of his constitutional rights); *Hanna v. City of Chicago*, 212 F. Supp. 2d 856, 860-61 (N.D. Ill. 2002), *rev'd on other grounds*, 65 Fed. App'x. 565 (7th Cir. 2003) (court declined to apply *Burford* abstention in challenge to city zoning ordinance imposing height restrictions since the substantive and procedural due process claims did not involve difficult issues of state law and the adjudication of such issues was not entrusted to a specialized tribunal); *Hyatt v. Town of Lake Lure*, 314 F. Supp. 2d 563 (W.D.N.C. 2003), *aff'd on other grounds*, 114 Fed. App'x. 72 (4th Cir. 2004) (in property owner's challenge of town's application of lakeshore regulations based on alleged violations of procedural and substantive due process rights, *Burford* abstention inappropriate based on prejudice to parties of having to repeat in state court action the litigation that had already occurred).

There is no doubt that the City has considerable interest in zoning and other matters deemed of local concern. However, under the specific facts present in this case, the court finds that neither *Burford* nor *Pullman* abstention is appropriate where the regulatory scheme adopted by the City arguably impairs Mt. Airy's constitutional and statutory rights.

## CONCLUSION

For the reasons stated herein, **IT IS RECOMMENDED** that Defendant's motion to abstain (Docket Entry 11) be **DENIED**.

_____
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
January 21, 2014